Walter TRINKLE, d/b/a Standard Shade & Blind Company, Plaintiff-Appellant and Cross-Respondent,

v.

SCHUMACHER COMPANY, a foreign corporation, Defendant-Respondent and Cross-Appellant.

Court of Appeals

*No. 79–1848. Submitted on briefs October 27, 1980.—Decided December 9, 1980.*
(Also reported in 301 N.W.2d 255.)

For the plaintiff-appellant and cross-respondent the cause was submitted on the brief of *Max E. Geline,* of Milwaukee.

For the defendant-respondent and cross-appellant the cause was submitted on the brief of *Jordan B. Reich* and *Kohner, Mann & Kailas, S.C.,* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J.  Plaintiff Walter Trinkle and defendant Schumacher Company both appeal from the trial court's judgment awarding plaintiff $1,275.50. Trinkle contends that, in addition to the $1,275.50 purchase price of the goods, he is entitled to recover consequential damages. Schumacher Company challenges the trial court's award contending that plaintiff should be barred from any recovery by the terms of the agreement between the parties. We agree with Trinkle and modify the trial court's award of damages.

Trinkle ordered 72 yards of fabric for $1,275.50 from respondent Schumacher Company, acting through its agent and representative, Ronald Chrisman. The fabric was delivered to Trinkle on August 27, 1976, and payment was made to Schumacher Company on September 12, 1976.

The invoice forwarded to Trinkle at the time of the purchase contained the following statement: "Positively no claims allowed after goods are cut." Schumacher is a fabric supplier and Trinkle is in the drapery business. Both were commercially experienced and had occasional business dealings with each other prior to this transaction.

After delivery to Trinkle and during processing into Roman shades,[1] it was discovered that the vinyl backing was improperly applied to the fabric. The defective condition was not determinable until the fabric had actually been processed into Roman shades. At that time it had already been cut.

---

[1] A witness described a Roman shade as "a flat piece of fabric folded in approximately two- or three-inch sections to imitate venetian blind type of window covering . . . . It is attached on a back with a series of rings, and a cord system to raise and lower it, and when it is fully open, it would appear as a flat piece of fabric, as such."

Upon discovery of the defect, Trinkle gave timely notice to Mr. Chrisman. Subsequently, Trinkle's customer refused to accept the completed shades in their defective condition.

This action was commenced by Trinkle for the recovery of damages. A trial was held in which Trinkle was awarded judgment in the amount of $1,275.50, the amount of the purchase price of the goods. Both parties appeal from that judgment and award.

This appeal is centered upon the following findings by the trial court:

4. That at the time of the purchase the representative of the defendant, Ronald Chrisman, who took the order, was fully advised that the purpose of having said fabric purchased was to have same fabricated into Roman Shades on behalf of a customer of the plaintiff. That the defendant through its agent and representative represented that said defendant company would, in addition to providing said material, have said material laminated and flame-proofed so that it would be a fit and suitable product for the purpose that had previously been presented to him on behalf of said company. That the material was of a defective character in that the lamination was improperly applied to said fabric so as to cause the fabric to become crooked and unsuitable for the fabrication of the Roman Shades and furthermore the lamination of the vinyl to the fabric was improperly applied so that the fabric was caused to bubble upon being fabricated into the form of Roman Shades.

5. That the plaintiff had fabrication work done on part of the order from his customer, Alpine Valley Resort located at East Troy, Wisconsin, and desisted from further work on said order upon discovery of the defective condition of the fabric for the reasons aforementioned and the refusal of said Alpine Valley Resort to accept the Roman Shades in the defective condition. That said defects were not reasonable [sic] determinable until work was done on said material that revealed the underlying defective condition thereof.

. . . .

8. That the plaintiff after discovery of said defective condition on or about December 6, 1976, made a timely refusal of said material and caused same to be returned to the defendant company.

9. That attached hereto as part of these findings is a true and correct copy of the invoice forwarded at the time of purchase. That part and parcel of said invoice is the following statement "Positively no claims allowed after goods are cut." The court finds that this provision in the order was and is fair and reasonable and that the alleged consequential damages that the plaintiff would otherwise be entitled to in the absence of such provision debars the plaintiff from making claim for the consequential damages other than the price that he paid for the fabric plus interest from and after December 6, 1976, and by reason of the aforementioned provision said plaintiff is denied consequential damages as were presented in the course of the trial . . . .[2]

The trial court then concluded that recovery of damages was limited to an amount equal to the purchase price of the goods. Although the trial court findings of fact are consistent with either an action for breach of warranty or recovery of the value of the goods, apparently the trial court permitted a limited recovery of value of the goods upon the theory of revocation of acceptance.[3]

[2] The trial court's finding has been attacked only as contrary to law. No question of the sufficiency of the evidence has been raised. We think it appropriate to note that the parties stipulated that the trial court could consider the deposition of Trinkle's subcontractor who processed the material and discovered its defectiveness. The deposition was not included in the record and has not been reviewed. We, of course, therefore rely upon the trial court's findings of fact. The finding that the fabric defects were not discoverable until the material was worked upon is of pivotal and critical importance.

[3] Acceptance occurred when Trinkle received the merchandise and paid the sales invoice or in any event when the fabric was cut. Sec. 402.606(1), Stats. Trinkle has not contended that he did not accept the goods.

If that was the theory of limited recovery, it was improperly applied because the evidence is uncontroverted that the revocation of acceptance occurred after the fabric was cut which was a "substantial change in condition of the goods which is not caused by their own defects," and thus was an ineffective revocation of acceptance. Sec. 402.608(2), Stats.; Official Comment 6 to U.C.C. §2–608 (identical to sec. 402.608, Stats.) states that the policy behind subsection (2) is "seeking substantial justice in regard to the condition of the goods restored to the seller." The subsection was created for the protection of the seller.

Acceptance normally does not deprive a buyer from bringing suit for a breach of warranty. *See Linscott v. Smith,* 3 Kan. App. 1, 587 P.2d 1271, 1274 (Kan. App. 1978) ; sec. 402.714, Stats; Official Comment 1 to U.C.C. §2–417 (identical to sec. 402.714, Stats.). Section 402.-714, Stats., is explicitly designed to recompense one who has accepted non-conforming goods.

We view Trinkle's complaint as a claim for relief based upon a breach of warranty. The trial court's findings establish a breach of an express warranty by Schumacher's agent that the flame-proofed laminated fabric was fit for its intended use in fabricating Roman shades. The trial court also found that the material was defective and unfit for the purposes intended, that the condition was timely discovered, and that Schumacher was promptly notified of the breach.[4]

"Remedies for breach of warranty can be limited in accordance with ss. 402.718 [inapplicable in this case] and 402.719 on liquidation or limitation of damages and on contractual modification of remedy." Sec. 402.316(4), Stats. The pertinency to this case of sec. 402.719 is

---

[4] Although Schumacher challenges the trial court's finding that there was a timely notification of breach, our review of the available record discloses ample credible evidence to sustain the finding.

centered in subsection (3): "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

Relying upon the provision of the sales invoice, "Positively no claims allowed after goods are cut," the trial court applied that provision as a conscionable limitation of consequential damages pursuant to sec. 402.719(3), Stats., and denied all established consequential damages except the cost of the goods. The limitation of the award of damages to the cost of the goods was improper upon a breach of warranty theory of liability. The cost of the goods was a consequential damage.[5] If the invoice provision excluding all consequential damages is conscionable, then it must be applied to exclude any damage award.

The unconscionability of a limitation of consequential damages is a question of law which we examine *de novo*.

Properly applied in this case, the limitation of consequential damages in the sales invoice would preclude recovery of any damages by Trinkle, although:

(1) the fabric was expressly warranted to be fit for the purpose intended;

(2) the fabric was in fact defective; and

(3) the defect was not discoverable until after work was done on the material which involved cutting the fabric.

---

[5] Upon a breach of warranty, the only measure of damages not consequential is the "difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Sec. 402.714(2), Stats. *See also* sec. 402.714(3).

Nonetheless, under those circumstances, Trinkle was effectively denied a remedy for the breach of warranty by Schumacher.

The sensible policy underlying sec. 402.719, Stats., is explained in Official Comment 1 to U.C.C. §2–719:

> Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.
> However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed.

In this case, the essential purpose of the sales invoice provision was to bar claims once the goods were substantially changed by cutting. By the express terms of that agreement, Trinkle assumed the risk for all latent defects that could not be discovered before the fabric was cut. Trinkle and Schumacher were experienced in the fabric industry business. Unconscionability rarely exists in a commercial setting involving parties of equal bargaining power. *U.S. Fibres, Inc. v. Proctor & Schwartz, Inc.*, 509 F.2d 1043, 1048 (6th Cir. 1975); *V-M Corp. v. Bernard Distributing Co.*, 447 F.2d 864, 869 (7th Cir. 1971). However, the vice of that limitation applied to this case is that it denies any remedy whatsoever to Trinkle, although the specific warranty of fitness for the purpose intended was breached. Not even recovery of direct damages pursuant to sec. 402.714(2), Stats., survives, much less recovery of the cost of the goods.

We find that the provision is unconscionable because it provides neither a minimum nor adequate remedy to Trinkle.

The trial court determined that Trinkle incurred the following consequential damages (sec. 402.715, Stats.) :

| | |
|---|---|
| Cost of goods purchased: | $1,275.50 |
| Fabrication work by subcontractor Drapery Mart, Inc. | 1,095.00 |
| Fabrication work by subcontractor Styline Draperies | 510.00 |
| Labor expended by Trinkle and Employer | 400.00 |
| TOTAL | $3,280.50 |

The judgment is modified to provide for recovery of damages in the sum of $3,280.50. The trial court allowed interest at 5% per annum from December 6, 1976, to entry of judgment upon the cost of the goods purchased, $1,275.50, together with the costs and disbursements of the action. Because that item of damage was immediately determinable upon breach and the others were not, we make no modification of that provision.

*By the Court.*—Judgment modified, and as modified, affirmed.